IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | Criminal Case No. 1:16-cr-162 |
| v. | ) | |
| | ) | Hon. Gerald B. Lee |
| YUSUF ABDIRIZAK WEHELIE. | ) | |
| | ) | Sentencing Hearing: April 28, 2017 |
| | ) | |
| Defendant. | ) | |

**POSITION OF THE UNITED STATES WITH RESPECT TO SENTENCING**

The United States of America, by and through its attorneys, Dana Boente, United States Attorney for the Eastern District of Virginia, John T. Gibbs, Assistant United States Attorney and Brandon L. Van Grack, Special Assistant United States Attorney, in accordance with 18 U.S.C. § 3553(a) and the United States Sentencing Commission, Guidelines Manual ("U.S.S.G." or the "Guidelines") § 6A1.2, files this Position of the United States with Respect to Sentencing of the defendant, Yusuf Wehelie. The United States submits that a sentence of 46 months would be sufficient and not greater than necessary to satisfy the factors set forth in 18 U.S.C. § 3553(a).

**I. FACTUAL BACKGROUND**

On November 15, 2016, the defendant pleaded guilty pursuant to a written plea agreement to count one of the indictment, charging him with possession of firearms by a convicted felon, in violation of Title 18 U.S.C. § 922(g)(1). The charges and plea stem from the defendant's actions, beginning in December 2015 in possessing firearms, despite his felony convictions. In December 2015, the defendant met an undercover FBI employee ("UCE-1"). The two of them had a consensually recorded conversation in which the defendant mentioned that he was a convicted

felon.[1] Nonetheless, while discussing his willingness to move thousands of dollars in cash for UCE-1, the defendant said that he would "definitely" be willing to use "tools," a slang term for firearms, to do so. PSR at ¶17.

On January 21, 2016, during a second consensually recorded conversation with UCE-1, the defendant asked if UCE-1 could help him obtain a firearm, specifically a revolver, for his cousin. When UCE-1 asked who the firearm would be for, the defendant said it would be for both of them, but since the cousin did not have a criminal record, the cousin could hold it. According to the defendant, "it'll definitely be for the both of us." PSR at ¶18.

In a subsequent consensually recorded conversation on January 21, 2016, UCE-1 asked the defendant if he would be willing transport "hammers," another slang term for firearms, for him. The defendant said that he would be willing to move these weapons, and he even suggested using his vehicle to do so since the vehicle was not known to law enforcement. PSR at ¶19.

On February 18, 2016, the defendant drove to Baltimore, Maryland and met in a hotel room with another undercover FBI employee ("UCE-2"). During this meeting, which was recorded, UCE-2 showed the defendant four Cobray, M-11 9mm automatic pistols with can-style suppressors and eight 20 round magazines. UCE-2 showed the defendant how to operate the firearms. The defendant was also informed that when in fully automatic mode, they could fire 1,200 rounds per minute. The defendant packed the firearms in a duffel bag before driving them in his car from Baltimore to Springfield, Virginia. There the defendant turned the four guns over to another FBI undercover employee. He was paid $300 for transporting the guns. PSR at ¶20-21.

---

[1] The defendant was convicted of a felony offense, statutory burglary, in Fairfax County Circuit Court, in 2011. This conviction stemmed from his actions in breaking into a residence with another individual and stealing a laptop computer valued at $2,000 and liquor valued at $50. PSR at ¶52.

In addition to transporting firearms, the defendant had discussions with undercover UCEs about jihad and potentially traveling overseas to join the Foreign Terrorist Organization, the Islamic State of Iraq and the Levant ("ISIL"). In a recorded conversation in March 2016, the defendant told UCE-1 that when he traveled overseas he would go straight to training and did not expect to live past one or two years. He further stated that the most beautiful thing was "to sacrifice yourself to Allah."

The defendant also asked if UCE-1 would assist him in traveling overseas. In February 2016, the defendant told UCE-1 that he supported ISIL because they told the truth. He further stated that ISIL showed their might like real Muslims and stated that they (meaning ISIL) would kill 100 people right in front of you and be proud of it. At the meeting in March 2016, which was recorded, the defendant and the UCE watched an ISIL video, and the defendant expressed a desire to travel overseas to help the cause. He said that he wanted to travel to Libya and join ISIL in Libya. During a previous meeting that occurred on January 21, 2016, the defendant opined that he would be less conspicuous traveling to Africa and there "are not a lot of eyes over there." When asked what he would do if he could not travel overseas, the defendant explained to UCE-1 his plans for a domestic plot. The defendant's plot was an attack on a US Armed Forces Recruiting Station. The defendant said he would visit a recruiting station and inquire about enlisting, all with the intention of getting the military personnel comfortable with him. He would return at a later time to commit the attack. According to the defendant, he wanted to cause a lot of damage and "empty the clip." He specifically identified a Marine Corps Recruiting Station as an ideal target. PSR at ¶47. In July 2016, following months of surveillance, and just prior to a trip to Minnesota, the defendant was arrested in the Eastern District of Virginia on the instant weapons charge. PSR at ¶22.

## II. STANDARDS GOVERNING SENTENCING

The standards governing sentencing are well-established. In <u>United States v. Booker</u>, 543 U.S. 220 (2005), the Supreme Court rendered the Sentencing Guidelines purely advisory, and emphasized that a sentencing court must consider both the Guidelines and the 18 U.S.C. § 3553(a) factors when making a sentencing decision. <u>Id.</u> at 264; <u>see also United States v. Kimbrough</u>, 552 U.S. 85 (2007) (stating that "the Guidelines, formerly mandatory, now serve as one factor among several courts must consider in determining an appropriate sentence"). In <u>Gall v. United States</u>, 552 U.S. 38, 128 S. Ct. 586 (2007), the Supreme Court instructed that the sentencing court should calculate the sentencing Guidelines range, permit the government and the defendant "an opportunity to argue for whatever sentence they deem appropriate," consider all of the § 3553(a) factors, and finally pronounce a sentence taking into account all of the relevant factors. <u>Id.</u> at 596-97. The <u>Gall</u> Court further instructed that, in the event that the sentencing court decides to impose a variance sentence, the court "must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance." <u>Id.</u> (noting that a "major departure should be supported by a more significant justification than a minor one.").

Applying these standards, the Fourth Circuit has concluded that a sentencing court must: "(1) properly calculate the Guideline range; (2) allow the parties to argue for the sentence they deem appropriate and determine whether the § 3553(a) factors support the sentences requested by the parties; and (3) explain its reasons for selecting a sentence." <u>United States v. Simmons</u>, 269 Fed. Appx. 272, 2008 WL 681764, at *1 (4th Cir. March 11, 2008) (<u>citing United States v. Pauley</u>, 511 F.3d 468, 473 (4th Cir. 2007)). When "rendering a sentence, the district court must make and place on the record an individualized assessment based on the particular facts of the

case." United States v. Cuthrell, No. 12-4077, 2012 WL 3643677, *1 (4th Cir. Aug. 27, 2012) (citing United States v. Carter, 564 F.3d 325, 328 (4th Cir. 2009)). Ultimately, the court "must state in open court the particular reasons supporting its chosen sentence." Carter, 564 F.3d at 328 (quoting 18 U.S.C. § 3553(c)). Courts "are not left with unguided and unbounded sentencing discretion." United States v. Green, 436 F.3d 449, 455 (4th Cir. 2006). Instead, at sentencing a court "must first calculate the Guidelines range." Nelson v. United States, 555 U.S. 350, 351 (2009); see also United States v. Hughes, 401 F.3d 540, 546 (4th Cir. 2005) (holding that a sentencing court is still required to "'consult [the] Guidelines and take them into account when sentencing'" (quoting Booker, 543 U.S. at 264)).

It is appropriate for the Court to consider the defendant's comments about wanting to perpetrate an attack on a military recruiting station in determining the proper sentence in this case. It is well-settled that a sentencing court can consider a broad array of information in fashioning an appropriate sentence:

> No limitation shall be placed on the information concerning the background, character and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence.

Title 18 U.S.C. §3661; see also, Pepper v. United States, 131 S.Ct. 1229, 1240 (2011)("In particular, we have emphasized that '[h]ighly relevant-if not essential-to [the] selection of an appropriate sentence is the possession of the fullest information possible concerning the defendant's life and characteristics'" (citation omitted)); United States v. Powell, 650 F3d 388, 391 (4th Cir. 2011)("Congress has instructed sentencing judges to consider a host of fact-intensive issues when imposing sentence, including the particular defendant's background and conduct, the need to punish and deter criminal wrongdoing, and the need to eliminate unjustified sentencing disparities.").

## III. SENTENCING CONSIDERATIONS

### A. Acceptance of Responsibility

In accordance with Section 6A1.2 of the Guidelines and Policy Statements and this Court's policy regarding Guidelines sentencing, the United States hereby represents that it has reviewed the United States Probation Office's presentence report ("PSR") prepared in this matter. The United States moves this Court, pursuant to U.S.S.G. § 3E1.1(b), to grant the defendant an additional one-level reduction in the offense level for acceptance of responsibility, if the defendant receives a two-level reduction for acceptance of responsibility. The government states that the defendant has assisted authorities in the investigation and prosecution of his own misconduct by timely notifying the United States of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the government and the Court to allocate their resources efficiently.

### B. Sentencing Guidelines

The government agrees with the Probation Office's Guidelines calculations. The Probation Office calculated that the defendant's <u>Total Offense Level is 19</u> and <u>Criminal History Category is III</u>, resulting in a recommended Guideline sentence of 37-46 months in prison.

### C. 18 U.S.C. Section 3553(a) Factors

After calculating the appropriate Guidelines range, "the court must 'determine whether a sentence within that range . . . serves the factors set forth in § 3553(a) and, if not, select a sentence [within statutory limits] that does serve those factors.'" <u>United States v. Moreland</u>, 437 F.3d 424, 432 (4th Cir. 2006) (quoting <u>Green</u>, 436 F.3d at 455). Title 18, United States Code, Section 3553(a)(1) provides that, in determining a sentence, courts must consider the nature and circumstances of the offense, as well as the history and characteristics of the defendant.

Additional factors outlined in Section 3553(a)(2) include the need for the sentence to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment for the offense, to afford adequate deterrence to criminal conduct, and to protect the public from further crimes of the defendant. 18 U.S.C. § 3553(a)(2)(A)-(C).

**D. Argument**

The recommended Guidelines sentence of 37-46 months of imprisonment appropriately reflects the seriousness of the offense, the characteristics of the defendant, the critical need to deter this type of conduct, and the defendant's clear knowledge of and intent to commit the harms he inflicted. In this case, a sentence at the upper end of that range, 46 months, is an appropriate sentence.

*Seriousness of the Offense*

The defendant's actions were quite serious. Despite being a convicted felon, he willingly acceded to UCE-1's request to help him move firearms across state lines. These were not any type of firearm – they were high-powered, automatic weapons capable of firing up to 1,200 rounds per minute. The defendant took possession of those weapons and then drove them by himself from Maryland into Virginia.

In addition, he did all of this in the context of his discussions with the UCE about wanting to get a gun for himself. And *those* discussions preceded his threatening comments about wanting to get an AK-47 and "empty the clip" during an attack on a military recruiting station if he was prevented from traveling overseas to join ISIL. The defendant made those threatening comments just a few weeks after he possessed the four high-powered firearms. And significantly, his plan to attack a military recruiting station also involved the use of firearms. Clearly the defendant was not at all deterred by his felony conviction from possessing and using

firearms. And in fact, the defendant was ordered detained in this case, in large part, due to these very chilling comments. (Wehelie Detention Transcript July 13, 2016, Attached). Given all of this information, this was a serious offense.

*Need for Adequate Deterrence*

The defendant's actions in this case justify a stiff sentence to deter him from making the same bad choices in the future, as well as to deter other convicted felons who may be tempted to possess firearms. It is clear the defendant knew that as a convicted felon he was prohibited from possessing firearms. In fact, when the defendant sought UCE-1's help in getting a gun, he told UCE-1 that his cousin could hold the gun because his cousin did not have a criminal conviction. PSR at ¶18. Clearly the defendant was aware that, as a convicted felon, he was a prohibited person, yet he still knowingly and willingly possessed firearms illegally. A strong sentence is needed to demonstrate to the defendant the seriousness of this offense, and to deter him from doing something similar in the future.

In addition, a firm sentence will help achieve the goals of general deterrence, by demonstrating to other convicted felons who may be tempted to possess firearms, that this sort of offense will be met with a severe punishment. A sentence at the upper end of the defendant's Guideline range will send exactly that message to other would-be defendants.

*Similarly-Situated Defendants*

While each case must stand on its own facts, there are certainly no shortage of cases in which a defendant who was convicted of being a felon in possession of firearms was sentenced to a term of imprisonment within the Guideline range. For example, in United States v. Carson, 372 Fed.Appx. 418 (4th Cir. 2010)(Unpublished Opinion), the defendant plead guilty to being a felon in possession of firearms in violation of Title 18 U.S.C. § 922(g)(1) and his advisory

Guidelines sentence was 51 to 63 months in prison. The Court imposed a sentence of 62 months, and the Fourth Circuit determined that there was nothing to overcome the presumption of reasonableness of such a within-Guidelines sentence. Carson at 419-420.

Similarly, in United States v. McNair, 174 Fed. Appx. 735 (4th Cir. 2006)(Unpublished Opinion), the defendant also plead guilty to being a felon in possession of firearms, and in that case the advisory Guideline range was 37-46 months. The Court in that case imposed a sentence of 37 months, and the Fourth Circuit declined to review the District Court's decision not to depart from the applicable Guideline range because it found that the sentence in that case was presumptively reasonable given that the District Court "appropriately treated the guidelines as advisory, properly calculated and considered the guideline range, and weighed the relevant § 3553(a) factors." McNair at 736.

Certainly there is nothing about the instant case that warrants treating this defendant differently from other individuals who committed this same offense, and were sentenced to a term of imprisonment within the Guideline range. That is especially true given the types of weapons that this defendant possessed and his statements about wanting to conduct a shooting in a military recruiting station.

*Characteristics of the Defendant*

The defendant's characteristics likewise favor a sentence of 46 months in prison. He has exhibited a long-standing proclivity to ignore and violate the law. Following his burglary conviction in 2010, the defendant was sentenced to a suspended sentence and 2 years of probation. However, the defendant violated the terms of his probation by failing to report as instructed, and by continuing to smoke marijuana while he was participating in substance abuse treatment. Ultimately, the defendant was found to be in violation of his probation. Yet even

after that point, he submitted an additional urine sample that tested positive for marijuana. PSR at ¶52. Given the defendant's poor performance previously while on supervision, a sentence at the upper end of the Guideline Range is appropriate.

The defendant's comments regarding wanting to support ISIL were extensive and troubling. While we do not know what actions the defendant would have taken to further those aims, we have reason to believe his comments were more than puffery. The conversations occurred over an extended period of time, were to multiple people and involved multiple options. Most disturbing of all, the defendant devised a backup plan which consisted of conducting attacks in support of ISIL in the United States should he be prevented from traveling. This attack plan involved strategic thinking in terms of target selection, method of attack and a ruse plan to gain access to the target location. The United States Government has an obligation to take threatening statements like the ones made by the defendant seriously and does not have the luxury of waiting to see if individuals follow through on their stated intentions.

Throughout his dealings with the FBI UCEs, the defendant was very self-possessed and aware. He made it clear he knew he was a prohibited person, yet he was not deterred from possessing firearms. He merely made sure to conceal his activities, whether by stating that he could get his cousin to hold a gun for him or by concealing the four Cobray, M-11's in a duffle bag.

The defendant should be imprisoned for a sufficient period of time to provide just punishment for the offense, to afford adequate deterrence to criminal conduct, and to protect the public from further crimes of the defendant. The defendant should be sentenced to 46 months of imprisonment.

## IV. CONCLUSION

For the reasons above, the Government submits that a sentence of incarceration of 46 months of imprisonment would be sufficient, and not greater than necessary, to satisfy the factors set forth in 18 U.S.C. § 3553(a).

Respectfully submitted,

Dana J. Boente
United States Attorney

By: _____/s/_____
John T. Gibbs
Assistant United States Attorney
Eastern District of Virginia
United States Attorney's Office
2100 Jamieson Avenue
Alexandria, Virginia 22314
Phone: (703) 299-3700
Email: john.gibbs@usdoj.gov

Brandon L. Van Grack
Special Assistant United States Attorney (LT)
Eastern District of Virginia
United States Attorney's Office
2100 Jamieson Avenue
Alexandria, Virginia 22314
Phone: (703) 299-3700
Email: brandon.van.grack2@usdoj.gov

**CERTIFICATE OF SERVICE**

I hereby certify that on this 20th day of April, 2017, I filed the foregoing pleading with the Clerk of Court and will send an electronic copy of such pleading to counsel of record via email.

        Respectfully submitted,

        Dana J. Boente
        United States Attorney

By:    /s/
        John T. Gibbs
        Assistant United States Attorney
        Eastern District of Virginia
        United States Attorney's Office
        2100 Jamieson Avenue
        Alexandria, Virginia 22314
        Phone: (703) 299-3700
        Email: john.gibbs@usdoj.gov