IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | Criminal Case No. 1:16-cr-162 |
| v. | ) | |
| | ) | Hon. Gerald B. Lee |
| YUSUF ABDIRIZAK WEHELIE. | ) | |
| | ) | Sentencing Hearing: July 14, 2017 |
| | ) | |
| Defendant. | ) | |

## POSITION OF THE UNITED STATES WITH RESPECT TO AN UPWARD SENTENCING DEPARTURE

The United States of America, by and through its attorneys, Dana Boente, United States Attorney for the Eastern District of Virginia, John T. Gibbs, Assistant United States Attorney, in accordance with the United States Sentencing Commission, Guidelines Manual ("U.S.S.G." or the "Guidelines") § 6A1.4, and the Federal Rules of Criminal Procedure 32(h), files this Position of the United States with Respect to an Upward Sentencing Departure for the defendant, Yusuf Wehelie. The United States submits that, given the facts of this case, an upward departure is warranted.  This would be so whether the increase above the Guideline range is characterized as an upward departure, or a variance sentence.  In either case, such an increase would be appropriate, and would be justified by the facts in this case.

## I.    FACTUAL BACKGROUND

The FBI's investigation of the defendant was driven, in large part, by evidence collected that showed that the defendant aspired to travel overseas to join the Foreign Terrorist Organization, the Islamic State of Iraq and the Levant ("ISIL").  To further the investigation, an undercover FBI employee ("UCE-1") was introduced to the defendant in December 2015.  Over the course of just

a few meetings with UCE-1, the defendant, a convicted felon, expressed a willingness to help UCE-1 move firearms across state lines. On February 18, 2016, the defendant did just that by transporting four Cobray, M-11 9mm automatic pistols with can-style suppressors and eight 20 round magazines from Maryland into Virginia. This is the offense of conviction.[1]

UCE-1 and the defendant also had discussions about jihad and potentially traveling overseas to ISIL. Long before the defendant came to the attention of the FBI, he had developed an interest in joining ISIL. In a recorded conversation on March 30, 2016, the defendant told UCE-1 that in 2013, Wehelie told his mother that he would travel to "Dar Ul Islam, Dar ul Iraq and sham" (Attachment A at p. 2). The defendant's fascination with ISIL was at least in part based on their propensity for violence. For example, in February 2016, the defendant told UCE-1 that he supported ISIL because they told the truth. He further stated that ISIL showed their might like real Muslims and stated that they (meaning ISIL) would kill 100 people right in front of you and be proud of it. (Transcript of Detention Hearing Attached at p. 13).

During that same meeting on March 30, 2016, the defendant told UCE-1 that when he traveled overseas he would go straight to training and he expected to become a martyr and to escape the punishment of the grave. (Attachment B at p.p. 1-2). The defendant also asked if UCE-1 would assist him in traveling overseas. The defendant and the UCE watched an ISIL video together, and the defendant expressed a desire to travel overseas to help the cause. He said that he wanted to travel to Libya and join ISIL in Libya.

During the March 30, 2016 meeting, UCE-1 asked the defendant what he would do if he could not travel overseas. The defendant responded by laying out a very detailed plan for a domestic terrorist plot here in the United States. The defendant described how he would go about

---

[1] The maximum statutory penalty for a violation of 18 USC 922(g) is ten years in prison. The Presentence Report calculates the defendant's guideline sentence at 37-46 months in prison.

attacking a US Armed Forces Recruiting Station. The defendant said he would visit a recruiting station and inquire about enlisting, all with the intention of getting the military personnel comfortable with him. He said that he would return at a later date to commit the attack. According to the defendant, he wanted to cause a lot of damage and "empty the clip." He specifically identified a Marine Corps Recruiting Station as an ideal target. PSR at ¶47. These comments become even more troubling because a US Armed Forces Recruiting Station is located less than one mile from the location where the defendant delivered the weapons in Springfield, Virginia. During the recorded conversation on March 30, 2016, while describing why recruiting stations were a desirable target, the defendant specifically mentioned Springfield (Attachment B at p. 3). During this conversation with UCE-1, the defendant also talked about committing an attack using a grenade or a belt that could take out 20 people.

Critically, the details of this plot came solely from the defendant. UCE-1 contributed nothing other than asking the defendant what he would do if he were to be prevented from traveling overseas to join up with ISIL. At that point, the defendant could have disavowed ISIL. He could have told UCE-1 that if he were to be stopped from traveling, he would abandon this notion of joining up with ISIL. But instead, the defendant laid out a plan that was chilling in its specificity, that also involved guns, and that was designed to inflict maximum casualties. The defendant's sentence should reflect this conduct.

## II.     AN UPWARD DEPARTURE IS APPOPRIATE IN THIS CASE

Given the egregious nature of the plot that the defendant described in March 2016, an upward departure from the Sentencing Guidelines is appropriate. The Guidelines specifically contemplate such an approach. USSG §1B1.4 provides that, "[i]n determining the sentence to impose within the guideline range, **or whether a departure from the guidelines is warranted**,

the court may consider, without limitation, any information concerning the background, character and conduct of the defendant, unless otherwise prohibited by law. See, 18 USC §3661." (Emphasis added). USSG §5K2.0(a)(1)(A) then lists the grounds for departure and notes that, "[t]he sentencing court may depart from the applicable guideline range if – there exists an aggravating or mitigating circumstance…of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines."[2]  That is plainly true in this case.  The defendant's comment about committing a terrorist attack in a military recruiting station is undoubtedly an aggravating factor.  And it was not taken into account by the guidelines in this case.  In fact, the defendant would still be facing the same 37-46 month sentence if he had been arrested as soon as he transported the four guns.

Simply put, the guideline calculation in this case was arrived at by looking only at the defendant's conduct in being a felon in possession of firearms. While the defendant's comments in March 2016 are referenced at paragraph 47 of the pre-sentence report, they had no impact on the final guideline calculation. An upward departure would take this aggravating circumstance into consideration, and would be consistent with Application Note 5 to USSG §5K2.0 which states that, "[d]epartures permit courts to impose an appropriate sentence in the exceptional case in which mechanical application of the guidelines would fail to achieve the statutory purposes and goals of sentencing."

Mechanically applying the final guideline calculation in this case without any consideration for the comments that the defendant made to UCE-1 in March 2016 would be inconsistent with the goal of making an individualized assessment of this defendant. See, Koon

---

[2]  USSG §5K2.14 Public Welfare (Policy Statement) states, "If national security, public health or safety was significantly endangered, the court may depart upward to reflect the nature and circumstances of the offense." Clearly §5K2.14 provides yet another basis to justify an upward departure in this case.  Similarly, USSG §8C4.3 provides, "If the offense constituted a threat to national security, an upward departure may be warranted."

v. United States, 518 U.S. 81, 113 (1996)("It has been uniform and constant in the federal

judicial tradition for the sentencing judge to consider every convicted person as an individual and

every case as a unique study in the human failings that sometimes mitigate, sometimes magnify,

the crime and the punishment to ensue").

Appellate courts are very deferential when sentencing courts impose sentences beyond

what the guidelines call for.  See, United States v. Whitley, 544 F. App'x 154, 159 (4th Cir.

2013)("When reviewing sentences that are outside the defendant's advisory guidelines range,

imposed either by departure or by variance, we consider whether the district court 'acted

reasonably both with respect to its decision to impose such a sentence and with respect to the

extent of the divergence from the sentencing range.' United States v. Hernandez–Villanueva, 473

F.3d 118, 123 (4th Cir.2007). In undertaking this analysis, we 'must defer to the trial court and

can reverse a sentence only if it is unreasonable, even if the sentence would not have been the

choice of the appellate court.'" United States v. Evans, 526 F.3d, 155, 160 (4th Cir. 2008)

(emphasis omitted)).

There is also nothing about this crime, being a felon in possession of firearms, to prevent

the Court from departing upward.  In United States v. Bellamy, 263 F.3d 448 (4th Cir. 2001), the

defendant was convicted of possessing a firearm by a convicted felon, and illegal possession of a

firearm in a school zone.  Despite a prescribed guidelines range of 51-63 months, the court

departed upward a total of eight levels and sentenced Bellamy to 137 months in prison.  Bellamy

at p. 450.  On appeal, the defendant claimed, among other things, that the trial court judge had

failed to give adequate notice of the fact that he was contemplating an upward departure.  The

Fourth Circuit found that there was sufficient notice of a potential upward departure due to the

fact that the PSR and the government brief had both noted that "an upward departure may be warranted" for brandishing a firearm.  Bellamy at p. 455.

Yet there is no problem related to notice in the instant case.  On April 24, 2017,  the Court issued a Notice of Possible Upward Departure in the case (Dkt. 39), and gave the parties four days to respond with their positions, or, in the alternative, the opportunity to seek a continuance if they needed more time to respond.  On April 25, 2017, the defense filed an unopposed motion to continue, and the Court postponed the sentencing until June 9, 2017 (Dkt. 43).  The defendant has been afforded ample notice that an upward departure is a possibility in this case.

In United States v. Torres, 281 Fed. App'x. 245 (4th Cir. 2008)(Unpublished opinion), the defendant was found guilty of possessing ammunition by a convicted felon in violation of 18 USC 922(g).  The sentencing judge departed upward and sentenced Torres to 100 months in prison.  On appeal, Torres claimed that he did not have adequate notice that the court would consider an upward departure at sentencing, and also,  that the judge had erroneously based the decision for an upward departure on prior arrests that did not result in convictions.  Torres at p.p. 248-249.  The Fourth Circuit determined that Torres had been provided with sufficient notice that he might be subject to an upward departure because the government had requested such a departure in its objections to the presentence report.  The Court also found that any error by the trial court related to Torres's prior convictions was harmless because the district court "relied primarily on Torres' extensive criminal history, including probation violations, revocations and history of assaulting law enforcement officers." Torres at p. 249.

III.    A VARIANCE IS ALSO APPOPRIATE IN THIS CASE

Although the Court has provided proper notice to the defendant that it is contemplating an upward departure at sentencing, it is important to note that if the Court wished to do so, it could also impose a sentence above what the guidelines call for through a variance.  In <u>Gall v. United States</u>, 552 U.S. 38, 128 S. Ct. 586 (2007), the Supreme Court instructed that the sentencing court should calculate the sentencing Guidelines range, permit the government and the defendant "an opportunity to argue for whatever sentence they deem appropriate," consider all of the § 3553(a) factors, and finally pronounce a sentence taking into account all of the relevant factors.  <u>Id.</u> at 596-97.  The <u>Gall</u> Court further instructed that, in the event that the sentencing court decides to impose a variance sentence, the court "must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance."  <u>Id.</u> (noting that a "major departure should be supported by a more significant justification than a minor one.").

Similarly, in <u>United States v. Spencer</u>, 848 F.3d 324 (4th Cir. 2017), the Fourth Circuit noted that in evaluating a variance sentence, it engages in a two-step process.  First, it determines if the district court made a procedural error such as improperly calculating the guideline range or failing to explain the sentence.  If no procedural errors occurred, the court then moves on to consider its substantive reasonableness under a deferential abuse of discretion standard, "[w]hile a district court's explanation for the sentence must "support the degree of the variance," <u>Gall</u> at 50, 128 S.Ct. 586, it need not find "extraordinary circumstances" to justify a deviation from the Guidelines, <u>Gall</u> at 47, 128 S.Ct. 586. Rather, because district courts are "in a superior position to find facts and judge their import," all sentencing decisions—"whether inside, just outside, or significantly outside the Guidelines range"—are entitled to "due deference." <u>Gall</u> at 41, 51, 128 S.Ct. 586.  <u>United States v. Spencer</u>, 848 F.3d 324, 327 (4th Cir. 2017).

**IV.   A SENTENCE ABOVE THE GUIDELINE RANGE THAT RECOGNIZES THE SERIOUSNESS OF THIS CONDUCT IS APPROPRIATE IN THIS CASE**

**A.  18 U.S.C. Section 3553(a) Factors**

After calculating the appropriate Guidelines range, "the court must 'determine whether a sentence within that range . . . serves the factors set forth in § 3553(a) and, if not, select a sentence [within statutory limits] that does serve those factors.'" United States v. Moreland, 437 F.3d 424, 432 (4th Cir. 2006) (quoting Green, 436 F.3d at 455).   As noted previously, the statutory maximum for this offense is ten years in prison.  Title 18, United States Code, Section 3553(a)(1) provides that, in determining a sentence, courts must consider the nature and circumstances of the offense, as well as the history and characteristics of the defendant. Additional factors outlined in Section 3553(a)(2) include the need for the sentence to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment for the offense, to afford adequate deterrence to criminal conduct, and to protect the public from further crimes of the defendant. 18 U.S.C. § 3553(a)(2)(A)-(C).

**B.  Argument**

The recommended guidelines sentence in this case is 37-46 months of imprisonment. However as noted previously, that guideline range would apply if the defendant had never told UCE-1 about his ideas for committing a domestic terror attack.  A sentence above that Guideline range would be appropriate to reflect the seriousness of the offense, the characteristics of the defendant, the critical need to deter this type of conduct, and the defendant's clear knowledge of and intent to commit the harms he inflicted.

*Seriousness of the Offense*

The defendant's actions were quite serious. Despite being a convicted felon, he willingly acceded to UCE-1's request to help him move firearms across state lines.  These were not any type of firearm – they were high-powered, automatic weapons capable of firing up to 1,200 rounds per minute.  The defendant took possession of those weapons and then drove them by himself from Maryland into Virginia.

In addition, he did all of this in the context of his discussions with the UCE about wanting to get a gun for himself.  And *those* discussions preceded his threatening comments about wanting to get an AK-47 and "empty the clip" during an attack on a military recruiting station if he was prevented from traveling overseas to join ISIL.  The defendant made those threatening comments just a few weeks after he possessed the four high-powered firearms.  And significantly, his plan to attack a military recruiting station also involved the use of firearms.  Clearly the defendant was not at all deterred by his felony conviction from possessing and using firearms.  And, in fact, the defendant was ordered detained in this case, in large part, due to these very chilling comments.

It also bears noting that the defendant's comments about committing a domestic attack here in the United States were consistent with what ISIL had been telling its followers to do in the months and years prior to March 2016.  See, "New ISIS video instructs followers to attack targets in the west," at http://www.cbsnews.com/news/new-isis-video-instructs-followers-to-attack-targets-in-the-west/; See also, "ISIS Urges Symathizers to kill U.S. Service Members It Identifies on Website," at https://www.nytimes.com/2015/03/22/world/middleeast/isis-urges-sympathizers-to-kill-us-service-members-it-identifies-on-website.html?_r=0.  These reports were from January and March 2015, respectively, and they were not unique.  ISIL's atrocities were

widely reported in the media, and the calls for attacks in the west understandably received a great deal of attention in the U.S. and Europe.

 The fact that the defendant told the CHS that, if he were to be prevented from leaving the United States, he would commit exactly the type of attack that ISIL had been encouraging for years is incredibly telling.  It indicates that the defendant followed, and was aware of, ISIL's most disturbing messages, that he supported those goals, and that he was a threat to take precisely the actions that ISIL was urging its followers to take.  Given all of this information, this was a serious offense that requires a stiff sentence.

*Need for Adequate Deterrence*

The defendant's actions in this case justify a stiff sentence to deter him from making the same bad choices in the future, as well as to deter other convicted felons who may be tempted to possess firearms, and to threaten to use firearms in criminal acts.  It is clear the defendant knew that as a convicted felon he was prohibited from possessing firearms.  In fact, when the defendant sought UCE-1's help in getting a gun, he told UCE-1 that his cousin could hold the gun because his cousin did not have a criminal conviction.  PSR at ¶18.  Clearly the defendant was aware that, as a convicted felon, he was a prohibited person, yet he still knowingly and willingly possessed firearms illegally.  The defendant also expressed a willingness to possess firearms in the future when he told UCE-1 about his plan to attack a military recruiting station and "empty the clip." A strong sentence is required to demonstrate to the defendant the seriousness of this offense, and to deter him from doing something similar in the future.

In addition, a firm sentence will help achieve the goals of general deterrence, by demonstrating to other convicted felons who may be tempted to possess firearms, and to make threats that involve firearms, that this sort of offense will be met with a severe punishment.

*Similarly-Situated Defendants*

It is difficult to find cases of similarly-situated defendants, because there do not appear to be many instances that involve felons in possession of firearms where those same felons made such detailed and troubling threats. This is precisely why an upward departure is warranted, because this case lies outside the heartland of this type of offense.

In its previously filed Position of the United States with Respect to Sentencing (Dkt. 36) at p.p. 8-9, the government set forth instances involving felons in possession of firearms who were sentenced *within* the guidelines. While those sentences were undoubtedly appropriate, they did not involve the type of additional, aggravating factor that is present in this case. In order to take account of that aggravating factor, an above-guidelines sentence is appropriate.

*Characteristics of the Defendant*

The defendant's characteristics likewise favor an upward departure and a stiff sentence. He has exhibited a long-standing proclivity to ignore and violate the law. Following his burglary conviction in 2010, the defendant was sentenced to a suspended sentence and 2 years of probation. However, the defendant violated the terms of his probation by failing to report as instructed, and by continuing to smoke marijuana while he was participating in substance abuse treatment. Ultimately, the defendant was found to be in violation of his probation. Even after that violation, he submitted an additional urine sample that tested positive for marijuana. PSR at ¶52. Given the defendant's poor performance previously while on supervision, a sentence at the upper end of the Guideline Range is appropriate.

Of even greater concern, the defendant's comments regarding wanting to support ISIL were extensive and troubling. While we do not know what actions the defendant would have taken to further those aims, we have reason to believe his comments were more than puffery. The

conversations occurred over an extended period of time, were to multiple people and involved multiple options. Most disturbing of all, the defendant devised a backup plan which consisted of conducting attacks in support of ISIL in the United States should he be prevented from traveling. This attack plan involved strategic thinking in terms of target selection, method of attack and a ruse plan to gain access to the target location. The United States Government has an obligation to take threatening statements like the ones made by the defendant seriously and does not have the luxury of waiting to see if individuals follow through on their stated intentions. That is why the moment that a determination was made to prevent the defendant from traveling to Minnesota, he was arrested on this gun charge. At the time of the arrest, the exact nature of the trip to Minnesota was unknown. With its proximity to the Canadian Border, the FBI could not risk the possibility of the defendant departing the United States.

The FBI could also not risk the possibility of an attack in the United States. The defendant had already told UCE-1 that if he were prevented from traveling to join ISIS, he would focus on committing a domestic attack here in the United States. If the defendant had simply been turned away from his trip to Minnesota, the defendant would have known that the government would likely not allow him to travel overseas. At that point, given the fact that the defendant had already committed a felony offense, and given what he had said about his plan of attack if he could not travel, the government had little choice but to arrest the defendant in the interest of public safety.

The defendant should be imprisoned for a sufficient period of time to provide just punishment for the offense, to afford adequate deterrence to criminal conduct, and to protect the public from further crimes of the defendant.

## V.  CONCLUSION

For the reasons above, the government supports the Court's consideration of an upward departure based upon the defendant's chilling and detailed description of a plan to commit a domestic terror attack on a military recruiting station.  Further, even if the Court determines that the guidelines are properly calculated at their current level, the government submits that the defendant's conduct, as reflected in paragraph 47 of the PSR, warrants an upward variance from the guideline range.  Such a sentence would be sufficient, and not greater than necessary, to satisfy the factors set forth in 18 U.S.C. § 3553(a).

Respectfully submitted,

Dana J. Boente
United States Attorney

By:       _____/s/_____
John T. Gibbs
Assistant United States Attorney
Eastern District of Virginia
United States Attorney's Office
2100 Jamieson Avenue
Alexandria, Virginia 22314
Phone: (703) 299-3700
Email: john.gibbs@usdoj.gov

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 7th day of July, 2017, I filed the foregoing pleading with the Clerk of Court and will send an electronic copy of such pleading to counsel of record via email.

Respectfully submitted,

Dana J. Boente
United States Attorney

By:    _____/s/_____
John T. Gibbs
Assistant United States Attorney
Eastern District of Virginia
United States Attorney's Office
2100 Jamieson Avenue
Alexandria, Virginia 22314
Phone: (703) 299-3700
Email: john.gibbs@usdoj.gov