**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| v. | : | CASE NO.   1:16-CR-162 (GBL) |
| | : | |
| **YUSUF ABDIRIZAK WEHELIE,** | : | Sentencing Date:  April 28, 2017 |
| | : | |
| **Defendant** | : | |

### POSITION OF THE DEFENDANT WITH RESPECT TO AN UPWARD DEPARTURE

This Court filed a *sua sponte* Notice of Possible Upward Departure. Mr. Wehelie submits that the circumstances of this case do not warrant an upward departure or variance from the advisory guideline range and that a sentence above the guidelines would be an unreasonable exercise of this Court's discretion. Mr. Wehelie further submits that for the reasons previously set out his Position on Sentencing, a sentence below the guidelines is sufficient but not greater than necessary to satisfy the goals of sentencing in this case.

As a preliminary matter, Mr. Wehelie decries the government's use of the Court's Notice of Possible Upward Departure as an invitation to disavow its prior sentencing recommendation and seek a sentence above the guidelines. The impropriety of seeking a harsher sentence ***solely*** because the Court has indicated its willingness to consider such a sentence should be obvious to prosecutors and defense lawyers alike and should be roundly rejected by the Court. To be absolutely clear, the government has not offered a shred of new evidence to justify a change in its prior sentencing recommendation. In fact, the government previously represented to this Court that "[c]ertainly there is nothing about the instant case that warrants treating this defendant differently from other individuals who committed this same offense, and were sentenced to a term of imprisonment within the Guideline range. That is especially true given the types of

1

weapons that this defendant possessed and his statements about wanting to conduct a shooting in a military recruiting station." (Position of the United States With Respect to Sentencing, Dkt. 36, p. 9). By the time the government filed its initial position on sentencing, the intelligence community had undoubtedly weighed in on what threat, if any, it believed Mr. Wehelie may have posed. That assessment was certainly considered by the United States when initially arguing for a guideline sentence. The idea that the government might now reverse itself and argue for a harsher sentence simply because one might be imposed not violates all notions of fundamental fairness but can be only lead to the breakdown of good faith negotiations with the government.

Secondarily, the parties agreed as part of the plea agreement in this case that Section 3A1.4 of the Sentencing Guidelines (the terrorism enhancement) does not apply to the defendant for the commission of the offense charged in the indictment. (Plea Agreement, ¶ 5.c., Dkt. 28, p.3).[1] The government's current position not only comes too much too late, but it is a blatant

---

[1] A crime of terrorism has the meaning given that term in 18 U.S.C. § 2332b(g)(5) for purposes of this guideline. 18 U.S.C.A. § 2332b provides:

 **(1) Offenses.**--Whoever, involving conduct transcending national boundaries and in a circumstance described in subsection (b)--

**(A)** kills, kidnaps, maims, commits an assault resulting in serious bodily injury, or assaults with a dangerous weapon any person within the United States; or
**(B)** creates a substantial risk of serious bodily injury to any other person by destroying or damaging any structure, conveyance, or other real or personal property within the United States or by attempting or conspiring to destroy or damage any structure, conveyance, or other real or personal property within the United States;

in violation of the laws of any State, or the United States, shall be punished as prescribed in subsection (c).

**(2) Treatment of threats, attempts and conspiracies.**--Whoever threatens to commit an offense under paragraph (1), or attempts or conspires to do so, shall be punished under subsection (c).

effort to circumvent the intent of the plea agreement by arguing that an upward departure from a guideline sentence "is required to demonstrate to the defendant the seriousness of **this offense**, and to deter him from doing something similar in the future." (Dkt. 48, p. 10). Mr. Wehelie's only offense is the possession of firearms by a convicted felon. He engaged in no other criminal conduct. Whether mere puffery or the expression of a passing interest in ISIL propaganda, the government now knows full well that Mr. Wehelie did nothing that represented a threat to travel overseas or carry out a terrorist attack on U.S. soil. Had there been a shred of credible evidence to the contrary, he would have most assuredly faced charges of providing material support to terrorists or of threatening actual acts of terrorism. The government would also be highlighting the specific actions undertaken by the defendant.

Mr. Wehelie wasn't arrested until July 7, 2016, five months after he committed the firearms offense, when the government learned that he intended to travel to Minnesota – a trip he discussed openly in text messages to his aunt with whom he planned to stay and with the young women he planned to visit. Other than Mr. Wehelie's statements during meetings with the UCEs, the government's multi-year investigation unearthed no evidence to support an upward departure from the recommended sentencing guidelines.

The government first made personal contact with Mr. Wehelie in December 2015 during an unrelated investigation involving the movement of untaxed cigarettes from Virginia to Maryland. By that time, Mr. Wehelie had already been under surveillance for five months and remained under constant surveillance for almost a year. In response to defense requests for discovery, the government has represented that the surveillance of Mr. Wehelie "is not probative of very much." (Email dated May 19, 2017). The government has provided the defense with the results of a year's worth of physical surveillance, as well as the results of searches conducted at

Mr. Wehelie's residence and of his cell phone, email and Instagram accounts.[2]  Significantly, the government agreed with counsel that the searches produced nothing of evidentiary value – and particularly no evidence of an **actual** threat.

Similarly, the government's new arguments for an upward departure bear no resemblance to the significance it previously placed on Mr. Wehelie's statements, or its assessment of the seriousness of the threat they actually posed.  Had Mr. Wehelie actually sought the UCE's assistance in travelling overseas or outlined a concrete plan by which to do so, the investigation would have taken a very different turn and Mr. Wehelie would have been facing terrorism charges.

Instead, Mr. Wehelie was known to the UCE to be a heavy drug user who nearly missed the meeting where he was supposed to pick up the firearms he agreed to transport from Maryland to Virginia.  And while the government described the choice of location for the meeting as "even more troubling because a US Armed Forces Recruiting Station is located less than one mile from the location where the defendant delivered the weapons in Springfield," (Dkt. 48, p. 3), it was the government, and not Mr. Wehelie that chose the location where the weapons were to be delivered.  For similar reasons, Mr. Wehelie's statements about committing an attack using a grenade or a belt that could take out 20 people and using guns designed to inflict maximum casualties, while chilling, should have no bearing on the appropriate sentence.  As the government well knows, Mr. Wehelie never had the means by which to carry out his threats and, more importantly, did nothing during the year he was being surveilled to achieve any of these objectives.

---

[2] The government has represented that Title III wiretaps and cell site and GPS location warrants were not conducted in this case – forms of surveillance typically used in cases posing far less serious threats than those the government now claims Mr. Wehelie posed.

In reality, nothing about his purported plans to travel overseas or plan for a domestic terrorist plot was remotely supported by his actions. When given the opportunity to handle the automatic weapons, Mr. Wehelie demonstrated a notable lack of interest. In general, nothing he did was consistent with his disconcerting statements and nothing known to the government supports the notion that he actually intended to follow through on any of the actions he described. While his words were undeniably cause for alarm, the legitimate concern they raised was not borne out by the government's lengthy investigation, that included examining the contents of his phone and online presence and keeping track of his whereabouts and contacts for approximately a year.

There is also nothing about the cases cited by the government or its policy arguments to warrant a sentence above the guidelines. As made plain by the Supreme Court, the general provisions of the Guidelines (including the policy statement embodied in § 5K2.0, on which the district court relied) mandate that departures be reserved for cases outside the heartland, and then only after the asserted basis has been identified and analyzed as an encouraged, discouraged, or unmentioned factor. See *Koon v. United States*, 518 U.S. 81, 95-96 (1996). "Every single departure must fulfill these criteria, regardless of whether the impetus to depart originates from a judge, prosecutor, or probation officer, or whether the possibility is suggested by the Guidelines themselves." *United States v. Bellamy*, 264 F.3d 448, 455 (4th Cir. 2001).

In *United States v. Grubbs*, 585 F.3d 793, 804 (4th Cir. 2009), the Fourth Circuit held that the sentencing court may upwardly depart from the applicable offense level based on facts "of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that, in order to advance the objectives set forth in 18 U.S.C. § 3553(a)(2), should result in a sentence different from that described." The court upheld an

upward variance rather than an upward departure based on the existence of substantial uncharged conduct in the form of additional incidents of abuse against the victims identified in the charged offenses and additional victims not identified in those convictions. The defendant also engaged in persistent and increasing abuse of victims after he became aware that authorities were investigating him for abuse. *Id*. at 805. Unlike *Grubbs*, there is no reason that a variant sentence is necessary to serve the factors set forth in § 3553(a). Mr. Wehelie severed ties with the UCE and undertook no action that gave credence to the scenarios he simplistically and hastily described. Regardless how chilling his comments, the government has failed to prove by preponderance of evidence that they related to the crime of conviction or that they are adequately supported to warrant an upward departure or a variant sentence.

By comparison, in *United States v. Wells*, 163 F.3d 889 (4th Cir. 1998), the Fourth Circuit upheld an upward departure from the guidelines where the defendant argued that he was being punished for being a member of the Freemen organization, an arguable violation of the First Amendment. An upward departure based solely on Mr. Wehelie's speech is arguably a similar First Amendment violation. The Court in *Wells* found ample evidence that the defendant's plans and activities supported the upward departure, a finding this Court will be hard pressed to make. First, Wells agreed to participate in a "court" that the Freemen established to try government officials. Second, he bought a Chevrolet Suburban that he brought to Montana. The plan was to use Chevrolet Suburbans to abduct government officials who would later be hanged, and the defendant was the only person supplying the Suburbans. Third, the court found that "the defendant otherwise actively participated in the group, despite knowing its violent goals, and even helped the group prepare." Finally, Wells did not challenge the district court's finding that the group engaged in terrorist activities. *Id*. at 899. Unlike *Wells,* the government

6

has not produced a scintilla of evidence that Mr. Wehelie furthered an actual terrorist plot or that he intended to do so, or that he actively engaged in terrorist activity.

Significantly, the only case cited by the government where adequate notice was not the issue upheld the district court's upward departure because of the defendant's "extensive criminal history, including probation violations, revocations and history of assaulting law enforcement officers" – factors not present in Mr. Wehelie's case. See *United States v. Torres*, 281 Fed. App'x. 245 (4th Cir. 2008) (unpublished). Departures not based on provable aggravating "conduct" are simply not outside the heartland of felon in possession cases.

The commentary to U.S.S.G. § 3A1.4 also fails to support an upward departure. Application Note 4 provides that:

> an upward departure would be warranted in cases "in which (A) the offense was calculated to influence or affect the conduct of the government by intimidation or coercion, or to retaliate against government conduct but the offense involved, or was intended to promote, an offense other than one of the offenses specifically enumerated in 18 U.S.C. § 2332b(g)(5)(B); or (B) the offense involved, or was intended to promote, one of the offenses specifically enumerated in 18 U.S.C. § 2332b(g)(5)(B), but the terrorist motive was to intimidate or coerce a civilian population, rather than to influence or affect the conduct of government by intimidation or coercion, or to retaliate against government conduct"

U.S.S.G. § 3A1.4, n. 4. The application note is clearly inapplicable to the circumstances of this case.

Mr. Wehelie submits that the arguments made in his Position With Respect to Sentencing provide the appropriate framework for examining his personal characteristics, the true nature of his criminal conduct, the need to provide individual deterrence and to deter the possession of firearms by convicted felons, and most importantly, his state of mind. Reports of what ISIL was telling its followers and of the atrocities reported in the media are not substitutes for the absence

7

of credible evidence that Mr. Wehelie posed an actual risk of committing similar acts, or that he continued to be influenced by ISIL propaganda.

Mr. Wehelie does not question the government's decision to arrest him or its obligation to take threatening statements like the ones he made seriously. The government does however have the obligation to present this Court with objective evidence that individuals are engaging in something more than puffery before seeking to punish them for acts they may never have intended to commit. In Mr. Wehelie's case, the government admits that it does not know even after conducting a multi-year long investigation whether he would have taken any actions to further those aims. That cannot be the basis for an enhanced sentence.

For the reasons stated above and those previously stated, Mr. Wehelie requests the Court reject the government's arguments in support of an upward departure or variance and impose a sentence that takes full account of the factors set forth in his Position on Sentencing.

Dated: July 11, 2017  Respectfully Submitted,

YUSUF ABDIRIZAK WEHELIE
By Counsel

_____/s/_____
Nina J. Ginsberg, Esquire
*Counsel for Defendant*
Virginia Bar No. 19472
DiMuroGinsberg, P.C.
1101 King Street, Suite 610
Alexandria, VA 22314
Tel: (703) 684-4333
Facsimile: (703) 548-3181
nginsberg@dimuro.com

**CERTIFICATE OF SERVICE**

I hereby certify that on this 11th day of July, 2017, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to counsel of record.

I further certify that a copy was also sent by e-mail to Terrell C. Sewell, U.S. Probation Officer, at Terrell_sewell@vaep.uscourts.gov.

/s/
Nina J. Ginsberg, Esquire
*Counsel for Defendant*
Virginia Bar No. 19472
DiMuroGinsberg, P.C.
1101 King Street, Suite 610
Alexandria, VA 22314
Tel: (703) 684-4333
Facsimile: (703) 548-3181
nginsberg@dimuro.com